"From and after the passage of this act all white men, residents of the Confederate States, between the ages of 17 and 50, shall be in the military service of the Confederate States for the war." Act of Congress, 17 February, 1864, sec. 1.
One of two constructions must be adopted: (1) It applies to individuals
who are, at the date of the passage of the act, between the ages of 17 and 50, as descriptio personarum, the same, in legal effect, as if the persons answering the description were named, and puts them in the military service "for (that is, during) the war." This (403) meaning can be given by adding the words "who are now," so as to make it read: "All white men, residents of the Confederate States, who arenow between the ages of 17 and 50, shall be in the service of the Confederate States for (that is, during) the war. This act shall take effect from and after its passage." According to this construction, all white men who are, at the date of the passage of the act, under the age of 50 would be liable to military service during the war, notwithstanding they afterwards arrive at that age, because they are embraced by the description; and all white men who are, at the date of the passage of the act, under the age of 17 would not be liable to military service, because they do not answer the description. So that, if this construction be adopted, and judgment is therefore rendered against the petitioner, the courts and judges will be bound, as a matter of course, upon the *Page 258 
authority of this decision, to discharge every one who has been, or may be, put in the military service who was not, at the passage of the act, 17 years of age.
There are two fatal objections to this construction: (1) In order to express the meaning, it is necessary to add words which are not found in the act, and the addition of which varies the sense materially. This is not authorized by any rule of construction. (2) According to the whole scope and tenor of the act, one of its main objects is to bring into the military service the young men who are continuously arriving at the age of 17; and the purpose is not only to embrace those who are 17 at the passage of the act, but all who shall thereafter arrive at that age; which purpose would be defeated by this construction, and it can only be contended for on the ground of an oversight, or casus omissus in framing the act, which, in so important a matter, the Court is not at liberty to assume.
(404) The second construction is that the section applies to a class composed of all white men between the ages of 17 and 50, without regard to the time when they may be between those ages, and puts them into military service as a class for (that is, during) the war. This meaning can be given simply by changing the position of the words "for the war," so as to make the section read, "for (that is, during) the war, all white men, residents of the Confederate States, between the ages of 17 and 50, shall be in the military service of the Confederate States." "This act shall take effect from and after its passage." The Court is authorized, by a well-settled rule of construction, to change the position of words. See Dwarris on Statutes.
Indeed, this change in the position of words in this instance is only for the purpose of making the sense clearer. For if persons are conscriptedas a class, it follows, of course, that they cease to be liable when they pass out of the class, and become liable when they enter the class. When no time is fixed at which they are to be between the ages designated, the conscription is necessarily as a class; the distinction being, when a time is fixed the conscription is as individuals, descriptio personarum. When no time is fixed, the conscription is as a class. Here the time is fixed; so the conscription is not as a class, and that consequence follows without reference to the position of the words "for (that is, during) the war," although it makes the sense clearer to put the words at the beginning of the section, instead of at the end. "For the war" is evidently used in the sense of "during the war," and conceding that the conscription is by a class, if the words "for (that is, during) the war" had been placed at the beginning of the section, the fact that a "senior reserve" would not be liable after arriving at the age of 50 is too plain for discussion; and it would be strange if the result can be different *Page 259 
from the circumstance that the words, "for (that is, during) the (405) war," happen to be at the end of the section. These words have no reference to the time of service; that is fixed by conscription as aclass, and the words are manifestly used to enact that the intended conscription of all between the ages of 17 and 50 should continue, or be in force, during the war.
According to this construction, all persons under the age of 17, for the time to come, on arriving at that age, enter into the class, and are liable to military service; and all persons under the age of 50, from time to time, on arriving at that age, pass out of the class, and are no longer liable to military service; the rule working both ways unless some provision be made to the contrary.
It may be objected to this construction that it lets out of the military service all who arrive at the age of 50. The reply is, there is nothing in the act tending to show that it was not the intention to let men, who were over 45 when conscripted, go out of the service on arriving at the age of 50; and there is reason to suppose such was the intention, on the idea that heads of families, after arriving at the age of 50, would be of more use to the country at home than if they are kept in the military service as senior reserves. But assume this not to be so, and that this construction also supposes a casus omissus, how does it compare with the casus omissus implied by the first construction? This lets out of thesenior reserves a few old men, comparatively speaking, while that fails to take in a large body of young men, who are looked to as the main resources of the country for future military operations in the regulararmy! By reference to the census statistics, the number of young men arriving at the age of 17 in the course of a year, in proportion to old men arriving at the age of 50, is about fifteen to one. From this it may be seen how much the public service will lose by adopting the first construction and rejecting the second; and of course if a casus omissus
is to be applied in both constructions, that should be supposed (406) which is of least consequence, and is the most likely to have occurred. The Court is of opinion that the second is the proper construction.
The perusal of the whole act will tend to support this construction. Mr. Winston, who argued for the Government, referred to section 5 as tending to support the first construction. It seems to us that this section sustains the conclusion to which we have arrived. The provision that persons failing to enroll themselves at the time required "shall be placed in the service in the field, for the war, in the same manner as though they were between the ages of 18 and 45," is imposed as a penalty on such as were recusant; in respect to whom the term of service is fixed, and excludes the idea of a general liability of all to serve for the war. *Page 260 
The suggestion of the learned counsel, that the proviso in this section that the persons mentioned shall constitute a reserve for State defenses, etc., should be modified by adding the words, "except those who fail to enroll themselves," has nothing to support it.
Our conclusion is also strengthened by reference to the other conscription acts. The act of April, 1862, conscripts, as a class, for three years or the war. The act of September, 1862, conscripts, as a class, for three years or the war, and the effect of passing out of this class, to relieve from further liability to service, is prevented by a proviso, "whenonce enrolled, all persons between the ages of 18 and 45 shall serve thefull time." This proviso was necessary to show an intention that, although the conscription was as a class, still, in respect to persons who should, after being enrolled, arrive at the age of 45, it was deemed important to retain them in service for the full time. The act under consideration in like manner conscripts for (that is, during) the war as a class, (407) those between the ages of 17 and 50. There is no proviso to continue in the service those who arrive at the age of 50 and pass out of the class. Whether a proviso to prevent this effect was left out on purpose, because it was not deemed expedient to keep senior reserves in service after they became 50 years of age, or was an oversight, we have no means of deciding. Our duty is to expound the law according to the sense of the words used by the lawmakers; and, in the absence of a proviso to the contrary, it follows, of course, that when a "senior reserve" arrives at the age of 50, he passes out of the class, and is no longer liable to military service.
There is no error in the judgment below.